IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH WETZEL, | No. 4:21-CV-01004 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CHARLES DIETTERICK and HEMLOCK TOWNSHIP, | |
| Defendants. | |

**MEMORANDUM OPINION**

SEPTEMBER 22, 2022

It is a serious thing to hold a municipality liable for the actions of its employees, and that is why the legal standard for municipal liability under 42 U.S.C. § 1983 is a challenging, but not insurmountable, one for plaintiffs to overcome. That standard cannot be satisfied by asserting conclusory allegations, or by failing to plead key facts connecting the municipality itself to the unconstitutional conduct. Most importantly for this case, the standard cannot be satisfied by alleging that a custom or practice of deliberate indifference exists because of one unsubstantiated incident that took place over six years ago. And one incident is one incident; a plaintiff may not dice a single event into multiple violations in an attempt to demonstrate a pattern where one does not exist under the facts alleged. For the reasons provided below, Hemlock Township's motion to dismiss is granted.

I.     BACKGROUND

Plaintiff Beth Wetzel's Amended Complaint alleges that on January 16, 2020, Plaintiff was pulled over and arrested by at least one Hemlock Township police officer.[1] Defendant Charles Dietterick was "present" at the scene, and when he informed Plaintiff that she was under arrest, she began to cry and said "[n]o, wait," with the intention to ask that she be handcuffed in the front of her body instead of from behind.[2] Before Plaintiff could make this request, Dietterick "grabbed her left arm and the back of her head and slammed her face into the rear windshield of one of the police cars."[3] At the scene, Plaintiff expressed her belief that excessive force had been used against her, to which Dietterick responded "[y]ou said '[n]o.'"[4] Collectively from the incident, Plaintiff suffered two black eyes, facial bruising, migraines (which continue to cause fatigue, light sensitivity, and nausea), and post-concussive syndrome.[5]

According to the Amended Complaint, this is not the first time that Dietterick has improperly used excessive force against a suspect.[6] There was an alleged incident on July 20, 2016 when Dietterick "unnecessarily inserted himself into the scene, and according to the actual arresting officers, forcefully grabbed and shoved

---

[1]   Doc. 24 at ¶ 6.
[2]   *Id*. at ¶¶ 7-11.
[3]   *Id*. at ¶ 12.
[4]   *Id* at ¶ 3.
[5]   *Id*. at ¶¶ 21-25.
[6]   *Id*. at ¶ 42.

the not-resisting suspect for no legitimate law enforcement reason."[7] After this incident, Hemlock Township's Chief of Police became aware of Diettrick's conduct when the arresting officers informed the Chief that they were disturbed by Dietterick's actions.[8] The Township failed to investigate these verbal reports of excessive force and ultimately did nothing, allowing Dietterick to continue working as a police officer, and putting suspects such as Plaintiff at risk.[9]

Based on these alleged facts, Plaintiff filed an original complaint against Dietterick on June 7, 2021.[10] She amended her complaint to add Hemlock Township as a party on December 30, 2021,[11] and the Township moved to dismiss the Amended Complaint on March 22, 2022 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[12] That motion has been fully briefed and is ripe for disposition.

---

[7]  *Id*. at ¶¶ 42-43. In their briefing, the parties argue about the facts surrounding the 2016 incident. Hemlock Township argues that Plaintiff cannot sufficiently allege that Dietterick was on duty and operating under the "color of law" during the incident (Doc. 35 at 5), and Plaintiff argues that whether Dietterick was on duty is "immaterial," citing a deposition of which this Court has no knowledge (Doc. 36 at 7). The parties then discuss at length the unpublished opinion *K.M.M. v. Scott Brozowski*, No. 97-CV-186 (M.D. Pa. 1998). As will be discussed in this opinion, this Court finds the 2016 incident, as alleged, to be an insufficient basis upon which to impose liability due to the fact it is only a single incident. Therefore, this Court need not address the parties' factual dispute. Nor will this Court address Dietterick's history of filing or not filing "use of force reports," as it seems Plaintiff concedes to have made these allegations in error—and even if they were true, they are not enough to overcome the Amended Complaint's single-incident fatal flaw.
[8]  Doc. 24 ¶ 45.
[9]  *Id*. at ¶¶ 45-49.
[10] Doc. 1.
[11] Doc. 24.
[12] Doc. 35.

## II. LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following *Bell Atlantic Corp. v. Twombly*[13] and *Ashcroft v. Iqbal*[14], "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15] In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[16]

## III. ANALYSIS

Plaintiff brings a single claim against Defendant Hemlock Township under 42 U.S.C. § 1983. A plaintiff asserting a cause of action under Section 1983 must allege: (a) "that some person has deprived [her] of a federal right;" and (b) "that the person who has deprived [her] of that right acted under color of state or territorial law."[17] In

---

[13] 550 U.S. 544 (2007).
[14] 556 U.S. 662 (2009).
[15] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[16] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[17] *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 506-07 (3d Cir. 2009) (internal quotations omitted).

4

the Third Circuit, it is established that *Monell v. N.Y.C. Department of Social Services*[18] "sets forth the test to determine if municipalities, not individuals, can be held liable under § 1983."[19] "Municipalities and other local government entities," such as Hemlock Township, "are 'persons' for purposes of Section 1983 liability."[20] Municipal liability "only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy."[21] Under *Monell*, a plaintiff must "identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered."[22]

A policy exists "when a decisionmaker possessing final authority to establish public policy with respect to the disputer action issues an official proclamation, policy, or edict."[23] A custom "is an act that is not formally approved but is nonetheless 'so widespread as to have the force of law.'"[24] A plaintiff may also establish municipal liability by demonstrating that "a policymaker failed to take affirmative action despite an obvious need to correct the 'inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights' that

---

[18] 436 U.S. 658 (1978).
[19] *Lepre v. Lucas*, 602 Fed. App'x 864, 869 n.4 (3d Cir. 2005) (per curiam).
[20] *Loomis v. Montrose Borough Police Dep't*, 2021 U.S. Dist. LEXIS 126980, at *8 (M.D. Pa. July 8, 2021) (citing *Monell*, 436 U.S. at 690).
[21] *Id.*
[22] *Id.* (internal citations omitted).
[23] *Id.* (internal citations omitted).
[24] *Id.* (internal citations omitted).

inaction exhibits 'deliberate indifference' to the need"—often referred to as the "deliberate indifference" standard.[25] A municipality exhibits deliberate indifference when it "disregard[s] a known or obvious consequence of [its] . . . action."[26]

The Third Circuit has elaborated on this standard, stating that "a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [when] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[27] In those circumstances, the municipal actor is determined to have adopted a "policy of inaction" where "the government's failure to act amounts to deliberate indifference towards the plaintiff's constitutional rights."[28] However, the Supreme Court of the United States has established that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a policymaker."[29]

---

[25] *Id.* at *8-9 (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).
[26] *Id.* at *9 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[27] *Forshey*, 2015 U.S. Dist. LEXIS 117777, at *9 (M.D. Pa. Aug. 10, 2015) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d. Cir. 2003)).
[28] *Id.*
[29] *Id.* (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24) (1985)); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 292-93 (3d. Cir. 2009).

Notwithstanding the Supreme Court's general rule, it is possible—though challenging—for a plaintiff to demonstrate a policy or custom via deliberate indifference in a single incident of unconstitutional conduct. This is only available to a plaintiff "in a very narrow range of circumstances," where the "risk of injury must be a highly predictable consequence of the municipality's failure to train and supervise its employees."[30] "Even if that showing can be made, the plaintiff still must demonstrate that the failure to train proximately caused [her] constitutional injury by identifying a particular failure in a training program that is closely related to the ultimate injury."[31] Ultimately, when asserting a single-incident *Monell* claim, "it is incumbent upon the plaintiff to assert well-pleaded facts which permit a finding of deliberate indifference grounded upon a risk of injury that must be a 'highly predictable consequence' of the municipality's failure to train and supervise its employees."[32]

Hemlock Township argues that the Amended Complaint fails to satisfy the standard set forth in *Monell* and its progeny. For the reasons set forth below, this Court agrees.

---

[30] *Santiago v. City of Harrisburg*, 2020 U.S. Dist. LEXIS 50359, at *28-29 (M.D. Pa. March 20, 2020) (internal citations and quotations omitted).
[31] *Id.* at *29.
[32] *Id.* (quoting *Thomas v. Cumberland County*, 749 F.3d 217, 225 (3d. Cir. 2014) (quoting *Connick*, 563 U.S. 51, 63-64 (2011))).

### A.     Official Policy or Custom

The facts alleged in the Amended Complaint, even when taken as true and viewed in the light most favorable to Plaintiff, do not demonstrate that Hemlock Township acted in a manner evincing a requisite policy or custom, or deliberate indifference, that would justify municipal liability under Section 1983.

The Amended Complaint seeks to demonstrate a policy or custom via Hemlock Township's alleged failure to investigate excessive uses of force by Dietterick.[33] To support this, the Amended Complaint pleads facts about one alleged incident of suspected excessive force by Dietterick over six years ago in 2016.[34] Plaintiff makes the—frankly, quite strange—argument that the single 2016 incident comprised multiple instances of excessive force by Dietterick.[35] For example, Plaintiff argues that Dietterick's alleged shoving of the suspect was one use of excessive force, and that his using a head lock style hold was another, and so on.[36] Thus, Plaintiff argues, the "2016 incident is in fact demonstrative of repeated uses of excessive force."[37] Plaintiff likewise argues that each report made by each officer regarding the 2016 incident should be counted as a separate report of excessive force.[38] Hemlock Township disagrees, arguing that the 2016 incident was single and

---

[33] Doc. 24.
[34] *Id*. at ¶¶ 42-47.
[35] Doc. 36 at 5.
[36] *Id*.
[37] *Id*.
[38] Doc. 36 at 10, 13.

isolated, not to be interpreted in such a "piecemeal manner."³⁹ This Court agrees with Hemlock Township. The Amended Complaint must plead more than the existence of a single incident in 2016 (including any reports that incident generated) in order to establish a policy or custom of deliberate indifference on the Township's part.

It is established that "[s]ingle-incident *Monell* claims are judged against a particularly exacting standard of pleading and proof."⁴⁰ Hemlock Township cites to a number of cases that support this assertion,⁴¹ and Plaintiff's attempts to distinguish or refute these cases are unavailing. For example, in *Waugaman v. City of Greenburg*, the court found that the plaintiff had presented "no evidence of a pattern of prior excessive force complaints, and thereby, no acquiescence by the City to prior uses of force."⁴² Instead, the "record reflect[ed] that [the defendant] had *one prior allegation* of excessive force, which was found not to violate the Constitution."⁴³ Plaintiff argues that the instant case is factually distinguishable because the 2016 incident included reports by "multiple officers" that they were disturbed by Dietterick's behavior.⁴⁴

---

39  Doc. 35 at 6-9; Doc. 37 at 1.
40  *Santiago v. City of Harrisburg*, 2020 U.S. Dist. LEXIS 50359, at *28 (M.D. Pa. March 20, 2020).
41  *See* Doc. 35 at 7-9.
42  2019 U.S. Dist. LEXIS 95887, at *38 (W.D. Pa. June 7, 2019).
43  *Id*. (emphasis added).
44  Doc. 36 at 9-10.

9

This argument is pedantic and unpersuasive; just like in *Waugaman*, the Amended Complaint in this case alleges one prior allegation of excessive force by Dietterick. That fact remains regardless of how many officers complained about it. Also as in *Waugaman*, it is not clear from the Amended Complaint that Dietterick's alleged conduct during the 2016 incident was found to have violated the Constitution. All we know from the Amended Complaint is that Dietterick behaved in a certain manner and that certain officers expressed concern to the police chief. Those vague facts are insufficient to satisfy the high single-incident standard.

Along the same lines, Hemlock Township cited to *Shuman v. Raritan Township*, where the plaintiff alleged that there had been three prior complaints of excessive force by an officer, and the court held that this "limited number of complaints . . . [fell] short of what is deemed acceptable in custom cases."[45] The court further reasoned that although the plaintiff did "introduce one prior and subsequent excessive force complaint against [the officer], other than alleging that the investigation [of each complaint] was deficient, plaintiff [did] not provide the Court with any basis to presume that those complaints in fact involved any misconduct that was not appropriately addressed."[46]

To distinguish and refute this case, Plaintiff again argues that each complaint by each officer relating to the 2016 incident should be counted separately. Assuming,

---

[45] 2016 U.S. Dist. LEXIS 164996, at *81 (D.N.J. Nov. 30, 2016).
[46] *Id.* at *82.

10

*arguendo*, that each complaint by each officer stemming from the same incident should be counted separately, that would still only total a handful of complaints, just like in *Shuman*. Those allegations were insufficient to demonstrate *Monell* liability in *Shuman*, and they are likewise insufficient here.

In *Pharoah v. Dewees*, the plaintiff pointed to five prior lawsuits against a police officer and the city to support his claim for *Monell* liability against the city.[47] The existence of those lawsuits, the court found, did not support plaintiff's *Monell* claims because the cases did "not establish that [the officer's] actions constituted a pattern of using excessive force"—specifically, two of the lawsuits resulted in jury verdicts for the defendants because "the triers of fact determined that [the officer] committed no such violation [of excessive force]," and the remaining three cases settled and "did not result in a finding that [the officer] used excessive force in making an arrest or otherwise violated the Constitution."[48] Plaintiff argues that this case is distinguishable because the *Pharoah* plaintiff "did not provide any evidence that the municipality failed to supervise or discipline [the officer] with respect to the prior incidents of excessive force."[49] The Amended Complaint, Plaintiff argues, sufficiently alleges details about a prior use of excessive force by Dietterick (the 2016 incident) and the Township's deliberate indifference in failing to investigate that incident.

---

[47]   2016 U.S. Dist. LEXIS 59668, at *7 (E.D. Pa. May 4, 2016).
[48]   *Id*. at *13-14.
[49]   Doc. 36 at 12.

Plaintiff is correct that *Pharoah* is distinguishable from this case, but in principle it is instructive. Yes, unlike the *Pharoah* plaintiff, the Plaintiff in this case has pled the existence of one prior incident of alleged excessive force. But just as the court in *Pharoah* found that the five prior lawsuits did not lead to any factual finding that excessive force was used by the officers, the 2016 incident did not result in any finding of excessive force. If there were, for example, over fifty other inconclusive or ignored complaints of excessive force by Dietterick (akin to the facts in *Adams* discussed *infra*), then deliberate indifference on the Township's part would be plausible. It is simply implausible, however, to determine that Hemlock Township was deliberately indifferent to Plaintiff's constitutional rights on the basis of a handful of comments[50] from two police officers about a single incident over six years ago.

Hemlock Township cites to *Adams v. City of Atlantic City* as an example of what Plaintiff would have had to plead in order to sufficiently demonstrate liability under Section 1983.[51] In *Adams*, the plaintiff pointed to over sixty-three complaints of excessive force about the officers in question.[52] One of the officers had received

---

[50] Indeed, it is unclear from the Amended Complaint whether the other officers present for the 2016 incident even filed formal complaints against Dietterick. Instead, the facts alleged seem to indicate that they "provided information" to the police chief and, at most, "reported" that they were "disturbed" by Dietterick's conduct. It is hard to imagine how Hemlock Township's alleged response gives rise to "deliberate indifference" under the *Monell* doctrine, when it is not apparent that any formal process was triggered by the officers' comments, or even should have been.
[51] Doc. 35 at 8-9.
[52] 294 F.Supp. 3d 283, 302 (D.N.J. Feb. 13, 2018).

forty-four complaints—and while none of those complaints were sustained—he "could not remember a single time he was warned or reprimanded by the police department."[53] Further, the Atlantic City Internal Affairs Department had received more than 550 complaints of excessive force, and of that monstrous number only two had been sustained.[54] This was highly suspect due to the fact that medical attention was required for excessive force complainants 71.9% of the time.[55]

    For the reasons stated above, the facts of *Adams* and this case are worlds apart. The facts alleged in *Adams* reveal a troubling and pervasive practice whereby dozens and dozens of individuals complained about excessive force and were harmed to the point that medical attention was required, all while Atlantic City routinely failed to sustain nearly all complaints and never even discussed them with the alleged offending officers. While Plaintiff's allegations against Dietterick are serious, they do not come close to demonstrating "a municipal custom coupled with causation"[56] attributable to Hemlock Township.[57]

---

[53]  *Id*.
[54]  *Id*.
[55]  *Id*.
[56]  *Id*. at 303 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).
[57]  The facts in this case are more akin to those in *Franks v. Cape May County*, where the plaintiff pointed to a single prior complaint lodged against an officer for excessive force as evidence that there was a "city practice or policy not to follow up on such claims and to tolerate an atmosphere of police misconduct." 2010 U.S. Dist. LEXIS 93226, at *33-34 (D.N.J. Sept. 8, 2010). Citing the Third Circuit, the court stated: "'[V]ague assertions about the police department's failure to investigate other wrongdoings,' coupled with a single case of failure to investigate, standing alone, 'will not support a reasonable jury finding of municipal policy or custom . . . which rises to the level of deliberate indifference required for Section 1983 liability.'" *Id*. at *36 (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d. Cir. 1995)).

Be that as it may, the Amended Complaint is bereft of facts establishing a causal link between Hemlock Township's alleged policy of not investigating excessive force reports, and Plaintiff's injury. The Amended Complaint states that Dietterick is a police officer for Hemlock Township, and that he was "present" when Wetzel was pulled over, arrested, and injured at Dietterick's hand.[58]

But Plaintiff fails to plead one vital fact, which is that Dietterick was in some manner connected to, or operating on behalf of, the Township on January 16, 2020 during the incident. Yes, the Amended Complaint alleges that Dietterick is a Township police officer, and yes, it alleges that Dietterick was present during the incident. But present in what capacity? As a civilian? As a police officer wearing a uniform? Was he displaying a badge? Did he announce himself as an officer? Plaintiff may argue that this Court can infer that Dietterick was on duty during the incident in question, but the Rule 12(b)(6) standard tests the sufficiency of facts, not inferences. As drafted, it seems that the Amended Complaint is asking this Court to "fill in" a blank in order to satisfy *Monell*'s "causal link" requirement. That is not the job of this Court. The link must be pled in the complaint itself, and it is worth noting, as a separate matter, that it is not properly pled here.

---

[58] Doc. 24 at ¶¶ 4 and 7.

## IV. CONCLUSION

Because the Complaint fails to sufficiently plead that Hemlock Township acted with "deliberate indifference" as required by *Monell* and its progeny, Count IV of the Complaint is dismissed without prejudice.[59]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[59] This Court will give Plaintiff one final opportunity to amend her complaint and cure the defects described herein. But, the Court advises Plaintiff: should she choose to amend, the amendments as to allegations against Hemlock Township should be substantive and not minor.