# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH WETZEL, | No. 4:21-CV-01004 |
| Plaintiff, | |
| v. | (Chief Judge Brann) |
| CHARLES DIETTERICK, | |
| Defendant. | |

## MEMORANDUM OPICTION

### DECEMBER 18, 2023

An officer placing an individual under arrest gratuitously slams the arrestee's head into the car: it is a scene familiar to viewers of Law & Order and what Plaintiff Beth Wetzel alleges happened when she was arrested by Defendant Charles Dietterick, an officer of the Hemlock Township Police Department. While it may make for entertaining television, the Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." Because there exist disputes of material fact regarding the circumstances of Wetzel's arrest, the Court will deny Dietterick's Motion for Summary Judgment.

## I.  BACKGROUND

### A.  Procedural History

Wetzel initiated this suit on June 7, 2021, filing a Complaint against Deitterick and Hemlock Township.[1] She subsequently amended her Complaint on December 30, 2021.[2] Deitterick Answered the Complaint on January 13, 2022.[3] The Court dismissed the claim against Hemlock Township on September 22, 2022.[4] After the parties attempted to resolve the dispute through mediation,[5] Dietterick filed a Motion for Summary Judgment on September 15, 2023.[6] Wetzel opposed Dietterick's Motion on September 29, 2023[7] and Dietterick filed a Reply on October 26, 2023.[8] The Motion is now ripe for disposition.

### B.  Undisputed Material Facts

Wetzel was arrested on January 16, 2020 for driving under the influence.[9] When told that she would be placed under arrest, Wetzel began crying and said "no, no, no."[10] Dietterick, during a sequence of events which the parties dispute and are

---

[1] Compl., Doc. 1.
[2] Am. Compl., Doc. 24.
[3] Ans., Doc. 31.
[4] Ord. Granting Mot. to Dismiss, Doc. 43; Mem. Op. re: MTD, Doc. 42.
[5] *See* Ord. Granting Extension of Time to Complete Mediation, Doc. 33.
[6] Mot. Summ. J. ("MSJ"), Doc. 50; MSJ Br. ("BIS"), Doc. 52; Statement of Material Facts ("SMF"), Doc. 51.
[7] MSJ Opp. ("BIO"), Doc. 44; Counterstatement of Material Facts ("CSF"), Doc. 54.
[8] MSJ Reply, Doc. 59; Ans. to CSF ("ACSF"), Doc. 58.
[9] SMF and CSF ¶¶ 6, 12, 40. Dietterick states that the arrest took place in 2020 (SMF ¶ 6), 2021 (SMF ¶ 12), and 2022 (SMF ¶ 40). The affidavit of probable cause is dated January 24, 2020. Doc. 54-9.
[10] SMF and CSF ¶ 43, 63.

discussed in greater detail below, "took two steps with [Wetzel] toward a vehicle" and "told her to stop resisting."[11] Eventually, a separate officer present at the scene handcuffed Wetzel and led her to his vehicle, putting her in the back seat.[12] A breath test indicated that Wetzel had a blood alcohol content of 0.254%.[13]

### C. Disputed Material Facts

Wetzel's claims turn on her allegation that "Dietterick grabbed Ms. Wetzel by the back of her head and smashed her face into a car."[14] Predictably, "Dietterick denies 'slamming' [Wetzel's] face into any vehicle," asserting that, to the extent "her face made contact with a vehicle, it was incident to reasonable force use in a lawful arrest."[15] To that point, the parties also dispute whether Wetzel resisted arrest.[16] Unsurprisingly, Wetzel avers that she did not,[17] and that her crying and saying "no, now wait" and "no, no, no" during the interaction "was pleading, not resistance."[18]

Also disputed is the extent of Wetzel's injuries. Deitterick makes much of the fact that videos of Wetzel's arrest do not show any apparent injury[19] and suggests that Wetzel's purported lingering symptoms, namely severe headaches, were preexisting medical conditions.[20] Wetzel asserts that, while she suffered from

---

[11] SMF and CSF ¶¶ 46. 48.
[12] SMF and CSF ¶¶ 51, 55.
[13] SMF and CSF ¶ 14.
[14] CSF ¶ 43.
[15] ACSF ¶ 46.
[16] CSF and ACSF ¶ 43.
[17] CSF ¶¶ 23-24.
[18] *Id.* ¶ 43.
[19] *E.g.*, ACSF ¶¶ 27-28.
[20] ACSF ¶ 39.

headaches prior having a septoplasty in 2011, she had not in the nine years between the surgery and her arrest.[21] On this point, the parties rely on competing expert witnesses. Therefore, to the extent that resolution of Dietterick's Motion turns on Wetzel's purported injuries, "a genuine issue of fact patently exists preventing summary judgment."[22]

## II.   LAW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  As expressed by the Supreme Court of the United States in *Celotex Corp. v. Catrett*, summary judgment is required where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[23] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[24]

---

[21]  CSF ¶ 38-39.
[22]  *In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig.*, 2021 WL 8016522 (M.D. Pa. July 19, 2021) (collecting cases).
[23]  477 U.S. 317, 322 (1986).
[24]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[25] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved by only a finder of fact because they may reasonably be resolved in favor of either party."[26] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[27] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[28]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[29] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[30] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[31]

---

[25] *Celotex*, 477 U.S. at 323.
[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[27] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[28] *Port Auth. Of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).
[29] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 422, 448 (1871)).
[30] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[31] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[32]

## III. ANALYSIS

### A. Excessive Force

"Whether force violates the Fourth Amendment is determined by the objective reasonableness standard."[33] The Supreme Court and the Third Circuit have identified the following factors for courts to consider in determining reasonableness: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, []whether [s]he is actively resisting arrest or attempting to evade arrest by flight,"[34] "physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."[35]

This lengthy, non-exhaustive list of factors underscores the Third Circuit's admonition that the reasonableness inquiry is to be "assessed in light of the totality

---

[32] Fed. R. Civ. P. 56(c)(3).
[33] *Rush v. City of Philadelphia*, 78 F.4th 610, 620 (3d Cir. 2023) (citing *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004); *Graham v. Connor*, 490 U.S. 386, 397 (1989)).
[34] *Graham*, 490 U.S. at 396.
[35] *Rush*, 74 F.4th at 620 (quoting *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

of the circumstances."[36] This analysis is conducted "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' making 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[37]

The Court agrees with Wetzel that, for the purposes of the *Graham v. Connor* analysis, driving under the influence, at least in the circumstances presented here, is not a particularly severe crime. Suggesting otherwise, Dietterick cites to a case finding that a DUI conviction is "sufficiently serious for purposes of 18 U.S.C. § 922(g)(1) to deprive [plaintiff] of his right to own a firearm."[38] However, in the context of the *Graham* inquiry, the severity of the crime is better understood as whether a crime is violent.[39] Further, Wetzel was no longer driving under the influence at the time of the arrest. The danger posed by her being intoxicated behind the wheel of a car had diminished.[40]

---

[36] *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (citing *Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999).
[37] *Id.* (quoting *Graham*, 490 U.S. at 396-97).
[38] *Zedonis v. Lynch*, No. 1:15-CV-1863, 2020 WL 5079202 at *1 (M.D. Pa. July 30, 2020*), report and recommendation adopted*, No. 1:15-CV-1863, 2020 WL 5078309 (M.D. Pa. Aug. 27, 2020).
[39] *See Wheeler v. City of Philadelphia*, 367 F. Supp. 2d 737, 743 (E.D. Pa. 2005) (observing that the Third Circuit "is more likely to find a crime severe when it is violent").
[40] *Cf id.* (discussing danger presented by suspect who had committed a violent assault and was still armed with the weapons used during the assault).

As explained above, there exists a dispute regarding whether, and if so, the degree to which Wetzel resisted arrest and the injuries, if any, sustained by Wetzel.[41] Dietterick acknowledges as much, stating that "while [Wetzel] did not attempt to run away, *it seems clear* from the totality of the circumstances and despite her denial that she tensed up her arms and pulled away while a handcuff attempt occurred."[42] That Wetzel's injuries are not visible on a video recording of the arrest is not dispositive, particularly on a motion for summary judgment. Even if the Court were to ignore the competing narratives and expert witness reports, bruises do not always appear instantly, nor do they, or any other physical symptom, accompany every serious head injury.

The Court accepts Dietterick's framing of the "duration of the action" as "almost half an hour" but draws the opposite conclusion—the protracted interaction suggests that this was not a situation where Dietterick was forced to make a split-second judgment.[43] Further, Dietterick has not presented evidence, other than his own conclusory statements, that Wetzel posed a danger to the officers or that she

---

[41] The Court notes that, even if Wetzel did resist arrest, it would not preclude her excessive force claim. *See Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997) (finding that an excessive force claim was not barred where plaintiff had been convicted of resisting arrest); *El*, 975 F.3d at 339 ("[E]ven if an individual is engaged in disorderly conduct, there still could be a level of responsive force and a level that is 'excessive and unreasonable.'") (citing *id.*).

[42] BIS 15 (emphasis added).

[43] *See El*, 975 F.3d at 337 (finding use of force unjustified where "situation unfolded over a few minutes, not a few tense and dangerous seconds"); *Keller v. Crawford*, 465 F. Supp. 3d 472, 480 (E.D. Pa. 2020) (denying summary judgment where interaction lasted fifteen to twenty minutes); *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 394 (E.D. Pa. 2010) (granting summary judgment where duration of action was "a total of ten seconds").

may have been armed.[44] Dietterick apparently did not believe that this possibility was so great as to have searched her for weapons in the fourteen minutes before Wetzel was handcuffed, militating against the use of force.[45]

The Court is mindful that the arrest took place on the shoulder of a roadway where the passing cars posed a danger to the officers and presented a risk that Wetzel, in her intoxicated state, may have stumbled into oncoming traffic. However, the presence of four officers mitigates against this risk.[46]

Having dutifully conducted the *Graham* inquiry, the Court is back where it started: the dispute over what force was used. Though "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," that force must still be "objectively reasonable."[47] Dietterick does not argue that slamming Wetzel's face into a car was

---

[44] *See Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (citing *Gonzalez v. Sec'y of the Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009); *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011)) (observing that conclusory, self-serving statements are insufficient on a motion for summary judgment).

[45] *See El*, 975 F.3d at 337 (noting plaintiffs were not violent, dangerous, or armed); *Stiegel v. Peters Tp.*, 600 F. App'x 60, 65 (3d Cir. 2014) (noting that courts have found it is a violation for officer to point a gun at an individual who does not pose a reasonable threat of danger or violence to police); *Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 630 (E.D. Pa. 2011) (finding officer used excessive force where "plaintiff's behavior did not suggest she was violent or dangerous, nor that she was armed").

[46] *See El*, 975 F.3d at 337 (finding use of force unjustified where officers outnumbered plaintiffs 6 to 2). *Johnson*, 837 F.3d at 353 (observing that it may be reasonable for officers confronting mentally disturbed individuals to await backup to minimize the need for force).

[47] *Graham*, 490 U.S. at 396-97.

reasonable, or even a mistake, only that he did not do it. Perhaps he did not, but that is not an issue the Court can resolve on the record before it.

### B. Qualified Immunity

"[Q]ualified immunity exonerates even unreasonable officer conduct unless (1) the officer violated a constitutional right, and (2) the right was clearly established 'such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful.'"[48] "Defendants asserting that they are entitled to qualified immunity have the burden to prove that the doctrine applies."[49]

Dietterick has not carried his burden here. Arguing that he is entitled to qualified immunity, Dietterick asserts "there was no Fourth Amendment violation and as such no reason for Officer Dietterick to have a reasonable idea that his actions were not entirely proper under existing law."[50] Put differently, Dietterick argues that he could not know his actions were unlawful because they were not in fact unlawful. Underlining the circularity of his argument, he suggests that if Wetzel's face did hit a car, "she was responsible for the event via her resistance (however it is more likely her face never touched a car because the cruiser video shows no marks, bruising or abrasions of any kind)."[51] Again, whether Wetzel's face hit the car, who was

---

[48] *Rush*, 78 F.4th at 619 (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).
[49] *Hewlette-Bullard on behalf of J.H-B. v. Pocono Mountain Sch. Dist.*, 522 F. Supp. 3d 78 (M.D. Pa. 2021) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014)).
[50] Reply 16.
[51] *Id. See also* BIS 19 ("Even assuming her face connected with a car during the arrest, she admits she was never bent over, and she was not injured.")

responsible if it did, and the extent of any injuries are disputed issues which preclude a finding at summary judgment that Dietterick's actions were lawful.

### C. State Law Claims

Police officers are privileged to commit what would otherwise be an assault and battery when effectuating an arrest, provided the force used was reasonable.[52] As discussed above, whether the force used by Dietterick was reasonable turns on disputed issues of fact. Therefore, the Court will also deny his motion as to Wetzel's state law assault (Count II) and battery (Count III) claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant Charles Dietterick's Motion for Summary Judgment is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[52] *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)).